IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHAUN ROSIERE, | : | HON. JEROME B. SIMANDLE |
| Petitioner, | : | Civil No. 11-4404(JBS) |
| v. | : | |
| UNITED STATES OF AMERICA, | : | **OPINION** |
| Respondent. | : | |

APPEARANCES:

Shaun Rosiere, <u>pro</u> <u>se</u>
7380 S. Eastern Ave.
#124265
Las Vegas, NV 89123

Fabiana Pierre-Louis, Assistant U.S. Attorney
Office of the U.S. Attorney
District of New Jersey
970 Broad Street Suite 700
Newark, NJ 07102

**SIMANDLE**, Chief Judge:

## I.  INTRODUCTION

This matter is before the Court on a <u>pro</u> <u>se</u> application by
Petitioner Shaun Rosiere for habeas corpus relief vacating his
sentence under 28 U.S.C. § 2255.  Petitioner has also filed a
motion for summary judgment [Docket Item 9] and a motion for
return of property [Docket Item 10.]

Petitioner pled guilty to one-count Indictment charging
conspiracy to commit mail and wire fraud and to a one-count
Information charging him with conspiracy to commit mail and wire
fraud.  Petitioner was sentenced to 73 months imprisonment as to

Count I of the Indictment and Count I of the Information, to be served concurrently.  Petitioner did not file a direct appeal of his sentence.

Petitioner's present habeas petition asserts that his defense counsel was ineffective for failing to investigate his case and failure to challenge the issuance and execution of multiple search warrants.  Petitioner also maintains that false statements were made against him during the course of the government's investigation and during the grand jury proceeding. Finally, Petitioner alleges that the government failed to disclose required Brady materials after the indictment and prior to his plea which invalidates his plea.  [Docket Items 1 and 4.]

Petitioner moves for summary judgment and argues this court lacked subject matter jurisdiction over the underlying criminal action because the indictment was obtained by presenting allegedly false and perjurious statements to the grand jury. [Docket Item 9.]  In addition, Petitioner also moves pursuant to Fed. R. Crim. P. 41(g) for the return of his property which was seized during the criminal investigation.  [Docket Item 10.]

For the reasons discussed herein, the court will deny Petitioner's motion for summary judgment as the court finds it properly exercised subject matter jurisdiction over the criminal indictment.  The court will also deny Petitioner's application for habeas corpus relief because Petitioner knowingly and

voluntarily waived his rights to bring a petition pursuant 28
U.S.C. § 2255 when he entered into the plea agreement.  Finally,
the court will grant Petitioner's motion to return property to
the extent the government has consented to return the inventoried
items in its possession.

## II.   BACKGROUND

On September 10, 2008, a grand jury returned a 24-count
Indictment against eleven individuals, including Petitioner Shaun
Rosiere.  Petitioner was charged in Count 1 (conspiracy to commit
mail and wire fraud), Count 9 (wire fraud), Count 15 (aggravated
identity theft) and Count 23 (aggravated identity theft).
[Docket No. 08-629, Docket Item 1.]  On June 26, 2009, Rosiere
appeared before Chief Judge Garret E. Brown, Jr. and entered a
plea of not guilty to the Indictment.  [Docket No. 08-629, Docket
Item 2.]

On April 9, 2009, the court entered an order for discovery
and inspection which required the government to release all
material evidence favorable to the defendant related to issues of
guilt, lack of guilt or punishment which was known or that by the
exercise of due diligence may have become known to the
government, within the purview of Brady v. Maryland and its
progeny.  [Docket No. 08-629, Docket Item 59.]  Subsequently,
Petitioner's attorney moved for the release of Brady materials
and specifically sought the production of all evidence seized

3

from 1969 Sinton Road, Evergreen, Colorado 80439, as this evidence was not provided by the government in its initial discovery disclosures.  [Docket No. 08-629, Docket Item 70.]  The government opposed the motion and argued it had fully complied with its disclosure requirements under <u>Brady</u> and <u>Giglio</u>.  [Docket No. 08-629, Docket Item 99.][1]

Before this motion was resolved, Petitioner entered an application for permission to enter a plea of guilty and entered into a plea agreement on September 17, 2009. [Docket No. 08-629, Docket Items 112 and 113.]  The plea agreement provided that Petitioner would plead guilty to Count 1 of the Indictment and one count of the Information.  The plea agreement also stated that Petitioner waived his right to appeal or collaterally attack the sentence through a Section 2255 petition if Petitioner was sentenced within the Guideline range for Guideline offense level 26.  (Resp't's Ex. A.)  Petitioner also waived any challenge to venue in the District of New Jersey and proceeded with the matter before Chief Judge Brown.  [Docket No. 08-629, Docket Item 111.]

A plea hearing was held this same day before Judge Brown. During this plea hearing, Judge Brown extensively questioned the Petitioner regarding the plea agreement, whether he understood the terms set forth therein, whether he was pleading guilty

---

[1] It does not appear from the docket that the motion for discovery disclosures was ever resolved.  No order or docket entry appears disposing of this motion.

because he was in fact guilty and for no other reason, whether he understood that he was waiving his rights to appeal and to file a writ or motion after sentencing, and whether he was satisfied with the services of his attorney and whether his attorney fully explained the consequences of entering a guilty plea.  Judge Brown also asked Petitioner's counsel whether the decision to plead guilty was knowing and voluntary and conducted an inquiry of Petitioner to determine independently whether his plea was knowing and voluntary.

Petitioner also admitted specific facts supporting his plea. In particular, Petitioner admitted to conspiring to defraud financial institutions and their account holders by fraudulently depositing into various corporate bank accounts checks purportedly received from customers of telemarketer businesses and withdrawing those funds from the victim banks knowing the checks were not obtained from consenting telemarketing customers. Petitioner also admitted to opening corporate bank accounts and incorporating numerous corporations in order to deposit funds derived from the scheme.

At no time during this hearing did the Petitioner indicate he was dissatisfied with counsel, negate the factual basis of his plea or claim that he was not making a knowing and voluntary decision to plead guilty.

On August 3, 2010, Petitioner was sentenced by Chief Judge

Brown.  [Docket No. 09-720, Docket Item 7.]  Prior to issuing the sentence, Petitioner filed a motion to recuse Judge Brown.  This motion was not filed by his attorney but rather was filed of Petitioner's own accord.  Petitioner's counsel withdrew it at the sentencing hearing and Judge Brown independently determined that it was patently frivolous.  [Docket No. 09-720, Docket Item 9.]

Petitioner also filed objections to the presentence report which were addressed by the court.  Petitioner's counsel stated that he did not know what Petitioner's particular objections were and Judge Brown permitted Petitioner to address the court directly with his arguments.  Petitioner explained that he talked to counsel on the phone about his objections and counsel indicated that he did not file the objections because he determined they were immaterial.  [Id. at 9:16-25.]  Judge Brown gave the Petitioner the opportunity to adjourn the sentencing to speak with his lawyer about his objections so they could be dealt with in open court.  Petitioner elected to orally discuss his objections with the court.  [Id. at 10:6-12:16.]  After hearing all of Petitioner's objections, Judge Brown determined that Petitioner's objections were not relevant to sentencing and dismissed them.  [Id. at 12:9-16.]

Prior to imposition of his sentence, Petitioner reiterated to the court that he took full responsibility for his actions.  [Id. at 15:9-13.]  The court was satisfied at the plea hearing

that Petitioner accepted responsibility and the court reiterated its satisfaction at sentencing despite not having a written acceptance of responsibility from Petitioner.  [Id. at 7:14-21; 17:4-5.]

There was an issue with regard to restitution at the sentencing because the government claimed Petitioner owed $1.768 million in restitution but had failed to disclose its report and findings to Petitioner's counsel.  Petitioner's counsel objected to this restitution amount and a short recess commenced so counsel could review the basis for government's figure. [Id. at 22:4-23:20.]  After the recess, Petitioner's counsel conceded the figure for restitution because he had reviewed the government's calculations which supported the $1.768 million amount.  [Id. at 24:9-13.]  This restitution was related to Petitioner's fraudulent activity with regard to Forex, a corporation consisting of two different groups, Active Trader News and MAAAC, which is detailed in Count One of the Information to which Petitioner entered a guilty plea.  [Docket No. 09-720, Docket Items 1 and 6.]

Judge Brown then issued his sentenced and committed Petitioner to 73 months of imprisonment on each count, to be served concurrently.  [Id., Docket Item 9 at 25 5:-9.]  In addition, Judge Brown imposed a term of three years of supervised release on both counts to run concurrently.  [Id. at 25:10-13.]

7

This sentence was within the Guideline range for a Guideline offense level of 26. Judge Brown also imposed restitution in the amount of $1,768,690 in accordance with the government's figures and Petitioner's concession. [Id. at 26:21-22.] However, Judge Brown declined to impose a fine because he recognized Petitioner did not have the ability to pay a fine and restitution was mandatory. [Id. at 27:1-3.]

On July 29, 2010, Petitioner filed the instant timely motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. [Docket Item 1.] The Petitioner relies on several grounds to support his application for habeas corpus relief. First, Petitioner argues the criminal investigation against him began when United States Postal Office and Inspector Lewis unlawfully withheld his mail. The Petitioner further argues that several search warrants were unlawfully issued and executed in violation of his Fourth Amendment rights during the criminal investigation. Petitioner maintains that Inspector Lewis and other government officials made false statements against him prior to and during the grand jury proceeding in violation of 18 U.S.C. §§ 1001, 1623. Petitioner also argues that the Assistant U.S. Attorney violated his discovery obligations by concealing evidence, withholding evidence and making false statements against him. Petitioner also maintains that the United States Postal Office did not have subject matter

8

jurisdiction to investigate this case because the postal inspectors committed non-sovereign acts and failed to adhere to their oath of office.  In addition, Petitioner states that he had ineffective assistance of counsel because Petitioner did not receive copies of the documents related to the case and he only had minimal discussion with his attorney regarding the matter. In terms of his sentencing, the Petitioner argues the government introduced and referred to new information which was not disclosed during the discovery phase and introduced a new witness that was not material to this case.  [Docket Items 1 and 4.] Therefore, Petitioner seeks to vacate his sentence.

In addition to his application for habeas relief, Petitioner filed a motion for summary judgment seeking to dismiss the underlying criminal action for lack of subject matter jurisdiction.  [Docket Item 9.]  Petitioner argues the indictment was obtained against him because false statements were made during the grand jury proceeding.  Consequently, Petitioner argues the indictment is invalid and there is no subject matter jurisdiction to prosecute him.  Petitioner also filed a motion for return of property pursuant to Fed. R. Crim. P. 41(g) and seeks return of the items which were seized from his home during the execution of multiple search warrants.  [Docket Item 10.]  It is undisputed Petitioner's home is in Colorado and the items were seized in the District of Colorado.

The government filed opposition to this petition as well as the pending motions for summary judgment and return of property. [Docket Item 14.]  First, the government argues that Petitioner made a knowing, voluntary and binding decision to enter into a plea agreement that included a waiver of his right to appeal and to attack his sentence collaterally.  The government maintains that Petitioner's waiver precludes the filing of this Section 2255 action.  Alternatively, the government argues that Petitioner's claims, with the exception of his ineffective assistance of counsel claim, are barred because Petitioner entered into an unconditional guilty plea and did not reserve these issues for collateral attack.  To the extent Petitioner argues ineffective assistance of counsel, the government maintains that this argument is without merit because it does not meet either prong of the Strickland standard.  The government maintains that there is no evidence Petitioner's counsel was so deficient to render him ineffective and there is no evidence that Petitioner would not have pled guilty or that the proceedings would have been different but for his counsel's alleged errors.

In regards to the pending summary judgment motion, the government argues this motion should be denied because Petitioner failed to meet the standard required to obtain summary judgment. Finally, the government maintains that Petitioner's motion for return of property should be denied for lack of venue since it

should have been filed in the District of Colorado where the property was seized in accordance with Fed. R. Crim. P. 41(g). However, the government admits that it has certain property in its possession here in New Jersey and has agreed to release this property to the Petitioner.

## III.  DISCUSSION

The court will first address Petitioner's motion for summary judgment since the Petitioner challenges the court's subject matter jurisdiction.  The court will then analyze the merits of Petitioner's application for habeas corpus relief and determine whether Petitioner knowingly and voluntarily waived his right to bring this collateral attack.  Finally, the court will discuss Petitioner's motion for return of property.

### A. Petitioner's Motion for Summary Judgment

The Petitioner argues summary judgment should be granted because this court lacked subject matter jurisdiction over the underlying criminal indictment since false statements were allegedly made during the grand jury proceeding.  The court finds this argument without merit and will deny Petitioner's motion.

It is well established that federal district courts have exclusive original jurisdiction over an indictment charging violations of the laws of the United States.  Specifically, 18 U.S.C. § 3231 provides, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts

11

of the States, of all offenses against the laws of the United States."  See also United States v. Abdullah, 289 F. App'x 541, 543 n.1 (3d Cir. 2008).

It is undisputed in this case that Petitioner was charged in the indictment with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 1349, wire fraud in violation of 18 U.S.C. § 1343 and § 1342, and aggravated identity theft in violation of 18 U.S.C. § 1028A.  These are all violations of the laws of the United States.  Therefore, pursuant to 18 U.S.C. § 3231, the district court properly exercised subject matter jurisdiction over the underlying criminal action.

Petitioner bases his motion on the argument that the indictment was procured through the false testimony of government witnesses and should consequently be considered void.  This argument does not affect the subject matter jurisdiction of this court over the underlying criminal matter.  Instead, this argument challenges the sufficiency of the indictment.

When reviewing the sufficiency of an indictment, a court looks at the entire indictment to determine "(1) whether the indictment contains the elements of the offense intended to be charged and sufficiently appraises the defendant of [the crime] she should be prepared to meet; (2) whether the indictment is specific enough to make a plea of double jeopardy possible." United States v. Werme, 939 F.2d 108, 112 (3d Cir. 1991).

Here, a detailed 79-page indictment was issued which specifically apprises the charged individuals of the offenses against them.  Petitioner was charged with conspiracy to commit wire fraud, wire fraud and aggravated identity theft.  The elements of each of these crimes are set forth clearly in the indictment.  In addition, this indictment was specific enough to prevent a claim for double jeopardy.  Therefore, the court is satisfied that the indictment was sufficient on its face as a basis for the underlying criminal action.  [Docket No. 08-629, Docket Item 1.]

Furthermore, it is well established that "a plea of guilty waives all non-jurisdictional defenses, whether these defenses be later raised in a § 2255 petition or a Rule 32(d) motion."  Woodward v. United States, 426 F.2d 959, 964 (3d Cir. 1970).  By entering into a knowing and voluntary guilty plea, which will be discussed in Subsection B.1 below, Petitioner waived his right to challenge the sufficiency of the indictment and cannot raise it now in the instant § 2255 petition.  Petitioner admitted to the acts charged in the indictment when he entered his guilty plea and cannot now be heard to challenge the accuracy of the facts which he averred when entering his plea.  "By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime."  Taccetta v. United States, 975 F. Supp.

13

672, 679 (D.N.J. 1997)(quoting United States v. Broce, 488 U.S. 563, 569 (1989)).

In this case, there is no dispute that the charges in the indictment are crimes under federal law and that the indictment is specific, apprised Petitioner of the offense charged and contains all the required elements of each offense.  Therefore, the indictment was sufficient and was properly within the subject matter jurisdiction of the federal court.  To the extent Petitioner brings non-jurisdictional challenges to the indictment, he waived his ability to bring these arguments when he entered into a knowing and voluntary plea agreement.

Accordingly, Petitioner's motion for summary judgment will be denied.

## B. Petitioner's Section 2255 Application

When considering a § 2255 petition the Court must hold an evidentiary hearing, unless the record and motion of a case conclusively indicate that the movant is not entitled to relief. United States v. Booth, 432 F.3d 542, 545-46 (3d Cir. 2005).  The Court is required to accept the Petitioner's factual allegations as true so long as they are not "clearly frivolous," which the Court can establish by examining the existing record.  Id. Nevertheless, should the movant's petition contain "vague and conclusory" allegations it is at the Court's discretion to dispose of it without further inquiry.  United States v. Thomas,

14

221 F.3d 430, 437 (3d Cir. 2000).[2]

A waiver in a plea agreement of the right to appeal and collaterally attack a sentence is valid as long as it was entered into knowingly and voluntarily and does not work a miscarriage of justice.  United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005).  "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it."  United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008.)

In this case, Petitioner does not argue that he did not understand the terms of the plea agreement or that he was coerced into entering it.  Petitioner essentially brings two main arguments.  First, Petitioner maintains that the government did not disclose certain required discovery and violated its obligations under Brady v. Maryland, 373 U.S. 83, 87 (1963).

---

[2] The court finds that the record is complete and conclusively shows Petitioner is not entitled to relief. Consequently, there is no need for an evidentiary hearing. Sepulveda v. United States, 69 F. Supp. 2d 633, 636 (D.N.J. 1999)(holding an evidentiary hearing not necessary where record establishes petitioner is not entitled to relief on the claims asserted); United States v. McCoy, 410 F.3d 124, 135 (3d Cir. 1980)(unless it appears conclusively from the record that petitioner is not entitled to relief, the court must conduct and evidentiary hearing).

Specifically, Petitioner maintains the government did not disclose the following information: evidence of the ownership of the 44 registered corporations in Colorado referenced in the indictment; copies of checks taken from Petitioner's safe during the execution of the search warrant; copies of contracts of sale and 14 checks dealing with JKST; information about the ten bank accounts seized in Colorado; and information about the person the government had contact with who "claimed" to be the Petitioner.[3] Because of this failure to disclose, Petitioner maintains he could not have knowingly entered into a plea agreement.

Second, Petitioner argues that he did not understand that a Guideline offense level of 26 meant a possibility of six years imprisonment. Petitioner maintains that his counsel told him he would face a maximum of three to three and a half years in prison. Consequently, Petitioner contends that his plea was not knowing.

For the reasons discussed below, both these arguments are unpersuasive.

In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request . . . where the

_____

[3] Petitioner claims that he never had any contact with the government or postal inspectors investigating the case and the government must have used a fake "Shaun" during its investigation. [Pet'r's's Reply at 22; Docket Item 1 at 12.]

16

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The Third Circuit has stated: "To establish a due process violation under Brady, then, 'a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material to either guilt or punishment.'" United States v. Pelullo, 399 F.3d 197, 209 (3d Cir. 2005), citing United States v. Dixon, 132 F.3d 192, 199 (5th Cir. 1997) (citations omitted). The government is not required under Brady to furnish a defendant with information he already has or, with any reasonable diligence, he can obtain for himself.  Id. at 213, quoting United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984). For example, when records seized from the defendant are made available for inspection, the government has no duty under Brady to identify or isolate specific documents that may be helpful to the defense. Similarly, with regard to documents in the public domain, such as the corporate registration documents in this case, Brady imposes no special duty of disclosure upon the government, since these are equally available to, and within the knowledge of, the defendant. See United States v. Bloom, 78 F.R.D. 591, 620 (E.D. Pa. 1977).

In the Third Circuit, the Court of Appeals rejected a motion to withdraw a guilty plea to an indictment because of an alleged

17

Brady violation, noting it is an open question whether Brady
requires disclosure of exculpatory information prior to the entry
of a guilty plea to an indictment.  United States v. Brown, 250
F.3d 811, 816 n.1 (3d Cir. 2001).  Compare United States v.
Avellino, 136 F. 3d 249, 255 (2d Cir. 1998) and Sanchez v. United
States, 50 F.3d 1448, 1453 (9th Cir. 1995)(holding that Brady
applies when a defendant enters a guilty plea to an indictment)
with Unites States v. Conroy, 567 F.3d 178 (5th Cir.
2009)(finding no Brady obligations before post-indictment guilty
plea).

     Further, Petitioner has pointed to no precedent suggesting
that Brady imposes due process obligations on the government at
the pre-indictment stage.  In fact, the Supreme Court has
strongly suggested that the opposite is true.  Specifically, the
Supreme Court held that the government is not obligated to
produce material impeachment evidence prior to a guilty plea
because "the Constitution, in respect to a defendant's awareness
of relevant circumstances, does not require complete knowledge of
the relevant circumstances, but permits a court to accept a
guilty plea, with its accompanying waiver of various
constitutional rights, despite various forms of misapprehension
under which a defendant might labor."  United States v. Ruiz, 536
U.S. 622, 630 (2003).

     In addition, the Seventh Circuit has rejected the

18

proposition that the government must provide any discovery to an unindicted subject of an ongoing investigation in <u>United States v. Underwood</u>, 174 F.3d 850, 854 (7th Cir. 1999).  The Seventh Circuit noted that "a guilty plea entered by a defendant who does not see the prosecution's hand in advance will still be voluntary, if, as was true in this case, the plea follows disclosure of an adequate factual basis."  <u>Id.</u> at 854.

In this case, Petitioner pled guilty to one count of the Indictment and one count of the Information.  Petitioner was sentenced to 73 months on both counts, to be served concurrently. With regard to Count I of the Information, Petitioner gave up his rights associated with indictment and trial.  He knowingly and voluntarily waived indictment in writing, as established at the Rule 11 hearing.  Specifically, during the Rule 11 colloquy, Judge Brown engaged in the following examination of Petitioner:

> COURT: And as far as the Information, you've given me a waiver of indictment, which is signed by you and your attorney, and also in the application you tell me your lawyer's explained to you the constitutional right to be charged by indictment of a grand jury, but you can waive that right and consent to be charged by Criminal Information filed by the U.S. Attorney; unless you waive indictment you may not be charged with a felony unless the grand jury finds by return of indictment there's probable cause to believe the crime was committed and you committed it; if you don't waive indictment the government may present the case to the grand jury [and] request it to indict you.  The grand jury might or might not indict you, but if you waive indictment the case will proceed against you just as if you'd been indicted. Do you understand that?
>
> A: Yes.

> COURT: You tell me you've discussed this with your attorney and you fully understand your rights; you wish to waive indictment by grand jury; and your decision to waive indictment is made knowingly, voluntarily, and no threats or promises have been made to induce you to waive indictment.  Is that true?
>
> A. Yes.

(Tr. 4:25-5:23.) While a negotiated plea to an information has many advantages for a defendant, it has, among its disadvantages, the simple procedural fact that the United States need never make discovery disclosures under Rule 16. A defendant accepts the benefits and the burdens of such a plea, and there is nothing unfair about this compromise of rights and obligations. Therefore, to the extent Petitioner argues Brady disclosures were required prior to his entering a guilty plea to one count of Information, his argument is without merit.  The court finds he knowingly and voluntarily waived his right to an indictment, and consequently waived his right to disclosure obligations under Rule 16 with regard to this charge.

The Petitioner also pled guilty to one count of the Indictment, conspiracy to commit mail and wire fraud.  Assuming for the sake of argument that Brady requires the government to disclose exculpatory information after the issuance of an indictment and prior to the entry of a guilty plea, Petitioner's argument fails because none of the information allegedly undisclosed is Brady material.  None of the documents or information listed by the Petitioner are exculpatory of the crime

admitted by Petitioner and most are within the knowledge of Petitioner and thus excluded by <u>Brady</u>.

The evidence of the ownership of the 44 registered corporations in Colorado referenced in the indictment is within the public domain and could have been obtained by Petitioner. Information regarding the copies of checks taken from Petitioner's safe during the execution of the search warrant is also evidence within Petitioner's knowledge and additional copies of the checks could have been obtained by Petitioner with due diligence. Similarly, information about the ten bank accounts seized in Colorado and the copies of contracts of sale and 14 checks dealing with JKST also contain information within the Petitioner's knowledge and could have been obtained by Petitioner with due diligence.

Most importantly, contrary to Petitioner's contention, none of this information is exculpatory of the crime to which he pled guilty. Specifically, Petitioner pled guilty to conspiring with other individuals to defraud financial institutions by depositing into various corporate bank accounts fraudulent checks. Petitioner admitted to opening numerous Colorado corporations to further this scheme, including Chain of Mines, Core Basic Data Systems, Engineering Systems, Fiesta, Go-Go, Big Daddy Go-Go, Inc., Gold, Inc., International Investment Fun, Macrosoft, National Investment Fun, Players Club, and Velocity

21

International.  Petitioner then admitted to opening business checking accounts for these corporations with the consent and knowledge of co-defendant Sacks and others to deposit funds derived from the scheme.  Petitioner further admitted to depositing approximately 15,000 check drafts into these fraudulent accounts which resulted in a total of $1,481,238 in fraudulent customer checks.  Petitioner then admitted to withdrawing $127,427 from the bank accounts which represented proceeds of the scheme. (Tr. at 17:22-22:7.)

None of the documents cited by Petitioner as the basis for his Brady claim is exculpatory of his admitted formation of these corporations, involvement in the conspiracy to commit wire fraud and receipt of proceeds from the fraudulent scheme.  The information allegedly not disclosed by the government prior to Petitioner's guilty plea does not undermine the factual basis for Petitioner's claim and it is not exculpatory of the conspiracy to commit mail and wire fraud.

Finally, Petitioner's allegation that the government used a person posing as him to have discussions with Postal Inspector Frank Jones and the government subsequently failed to disclose the identity of this "other Shaun" is inherently incredible. (Pet'r's to Vacate (Docket Item 1) at 12 and Pet'r's Reply at 22.)  To the extent Petitioner challenges the veracity of Inspector Jones' statements about his conversation with

22

Petitioner, Petitioner's recourse was to cross-examine Inspector Jones at trial.  Petitioner chose to forgo trial and plead guilty.  Petitioner cannot now be heard to frivolously argue that the government used an imposter and staged the conversation with Inspector Jones to fabricate the indictment.

Therefore, Petitioner's claim that his guilty plea cannot be considered knowing and voluntary because the government withheld exculpatory information in violation of Brady is without merit.

The Petitioner next argues that his attorney told him he would only be sentenced to imprisonment for three years and if he had known Guideline offense level 26 would result in six years of imprisonment he would not have pled guilty.  This argument also lacks merit and is insufficient to undermine Petitioner's knowing and voluntary waiver of his right to file a Section 2255 petition to challenge his sentence.[4]

In determining whether a plea agreement was entered into knowingly and voluntarily, "there is no adequate substitute for demonstrating in the record at the time the plea is entered the

---

[4] This argument is also insufficient to support a claim for ineffective assistance of counsel.  The Third Circuit has held "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.  United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007).  As discussed further in the court's analysis, the court finds the Rule 11 plea hearing was sufficient and thoroughly explained to Petitioner that any promises regarding the length and severity of his sentence were not binding and sentencing was within the sole discretion of the court.

defendant's understanding of the nature of the charge against him."  McCarthy v. United States, 394 U.S. 459, 470 (1969).  The Third Circuit has directed district courts to evaluate the specific terms of the plea agreement and the district court's colloquy during the Rule 11 hearing to determine whether the plea was knowing and voluntary.  United States v. Jackson, 523 F.3d 234, 243 (3d Cir. 2008).

In this case, Petitioner entered into a plea agreement which specifically outlines the Court's discretion in sentencing the prisoner and the lack of the government to make promises regarding the sentence ultimately imposed.  In particular, this plea agreement states:

> The violations of 18 U.S.C. § 1349 to which Shaun Rosiere agrees to plead guilty carry a statutory maximum prison sentence of 20 years for each count and a statutory maximum fine for each count equal to the greatest of: (1) $250,000; (2) twice the gross amount of any pecuniary gain that any persons derived from the offense; or (3) twice the gross amount of any pecuniary loss sustained by any victims of the offense.  Fines imposed by the sentencing judge may be subject to the payment of interest.

> The sentence to be imposed upon Shaun Rosiere is within the sole discretion of the sentencing judge, subject to the provisions of the Sentencing Reform Act, 18 U.S.C. § 3551-3742, and the sentencing judge's consideration of the United States Sentencing Guidelines.  The United States Sentencing Guidelines are advisory, not mandatory. The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment and the maximum statutory fine. This Office cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Shaun Rosiere ultimately will receive.

(Resp't's Ex. A at 2.)

In addition to this portion of the agreement outlining the sentencing judge's discretion, the plea agreement also provided that Petitioner "voluntarily waives, the right to file any appeal, any collateral attack, or any other writ or motion, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentence imposed by the sentencing court if that sentence falls within or below the Guidelines range that results from the agreed total Guidelines offense level of 26."  (Resp't's Ex. A at 7.)

Petitioner acknowledged in writing that he received the plea agreement, read it and understood it fully.  He further stated that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.  (Resp't's Ex. A at 5.)

The discretion of the sentencing judge and Petitioner's waiver of rights to collaterally attack the sentence by filing a motion under Section 2255 were further painstakingly explained and explored during the Rule 11 hearing by the sentencing judge and government counsel.  First, Judge Brown explained that the court has discretion in imposing a sentence and neither the judge nor the government could tell Petitioner what his sentence would be until the presentence report was issued.  Judge Brown explained:

25

COURT: Now, you tell me that you're pleading guilty because you're in fact guilty and no one's made any threats or promises to cause you to plead guilty; you understand the sentence to be imposed upon you is in the sole discretion of the sentencing judge, subject to the principles of the Sentencing Reform Act, there are sentencing guidelines, they have maximum and minimum terms and those are advisory only.   The judge must consider those, must consider the other statutory factors identified in 18 U.S.C. Code Section 3553(a) in deciding what sentence to impose, but the judge has the authority to impose a sentence more severe, up to the statutory maximum, or less severe than that recommended by the guidelines.
You understand?

ROSIERE: Yes.

COURT: Furthermore, the court will not be able to determine the sentence for your case until the presentence report has been completed, both you and the government had an opportunity to read the report and challenge any facts reported by the probation officers. Parole has been abolished, if you are sentenced to prison you won't be released on parole.   You will be subject to a term of supervised release following any term of imprisonment, as set forth in paragraph 32 here, and <u>you have no right to withdraw your plea on the grounds that anyone's prediction as to the guideline range or expectation of sentence proves inaccurate</u>.
Do you understand that?

ROSIERE: Yes.

(Tr. at 10:5-11:-8)(emphasis added).   Next, Judge Brown directed

the Assistant U.S. Attorney to explain the contents of the plea

agreement and confirmed that this explanation matched

Petitioner's understanding of the plea agreement. (Tr. at 12:1-

13:21.)   The sentencing judge then discussed Petitioner's

decision to waive his right to appeal the sentence:

COURT: You understand that you are waiving certain rights here, including your rights to file an appeal, collateral

26

attack, writ or motion after sentencing.
You understand that?

ROSIERE: Yes.

COURT: You could otherwise file an appeal but here you're
agreeing not to.  You understand that?

ROSIERE: Yes.

COURT: Is this a knowing and voluntary waiver counsel?

COUNSEL: It is.

COURT: I find the defendant is competent, has a full
understanding of the charges and penalties, the plea is
free, knowing and voluntary . . .

(Tr. at 13:22-14:11.)  The court then allowed the Assistant U.S.

Attorney to further question Petitioner regarding his decision to

waive his right to collaterally attack his sentence if the

sentence imposed was within or below Guideline Offense Level 26.

AUSA:  Mr. Rosiere, first, do you understand that the
United States Sentencing Guidelines are advisory, not
mandatory?

ROSIERE: Yes.

AUSA: Do you understand that the sentencing judge, Judge
Brown, may impose a sentence higher or lower than that
recommended by the guidelines?

ROSIERE: Yes.

AUSA: With regard to the appellate waiver that Judge
Brown just referenced, are you aware that the law permits
every defendant such as yourself, as well as the
Government, to file an appeal of your sentence if either
you or the Government believe that there was some type of
error?

ROSIERE: Yes.

AUSA: Do you also know that you have the right, if you

27

believe there's been an error, to file another type of collateral challenge to your conviction under applicable laws, Title 28 U.S.C. Section 2255?

ROSIERE: Yes.

AUSA: Do you understand that you give up your right to appeal or otherwise challenge your sentence in this situation set forth in your plea agreement that the Judge just referenced?

ROSIERE: Yes.

AUSA: Specifically, do you understand that if the Judge imposes a term of imprisonment that falls within or below the guideline range of 26, you cannot appeal or challenge your sentence?

ROSIERE: Yes.

AUSA: Do you understand that if the Judge imposes a term of imprisonment below that range by whatever guidelines analysis he uses, you will not be able to file an appeal, a Section 2255 petition, writ, motion or collateral attack challenging your term of imprisonment or any aspect of your sentence?

ROSIERE: Yes.

AUSA: Do you understand that your plea only allows you to challenge your sentence if the Judge imposes a prison term that is above that range or to challenge his determination of your criminal history category?

ROSIERE: Yes.

AUSA: Do you understand that the United States cannot appeal if your prison sentence is within or above that range, and neither you, nor the United States, can appeal claiming that the Judge should not have accepted your stipulations in the plea agreement?

ROSIERE: Yes.

AUSA: Did you discuss with your attorney this waiver of appeal and waiver of your right to file a collateral attack?

ROSIERE: Yes.

28

AUSA: Are you satisfied with the explanation that your attorney provided?

ROSIERE: Yes.
(Tr. at 14:19-16:19.)

In this case, the court is satisfied that the record conclusively shows Petitioner's decision to enter into a plea agreement and plead guilty was knowing and voluntary. Petitioner's allegation that he only entered into a plea agreement because he thought he would be sentenced to a maximum of three years imprisonment is unfounded and unsupported by the language of the plea agreement and the Rule 11 hearing.

The plea agreement unequivocally states that the terms of the agreement are not binding on the sentencing judge and that Petitioner could be sentenced in accordance with the statutory maximum for the crimes pled, which in this case was 20 years for each conspiracy charge.  This understanding was reinforced by the sentencing judge at the plea colloquy when Judge Brown reiterated that the court had discretion in imposing a sentence and Petitioner's sentence could not be determined until the presentence report was issued.

In fact, Judge Brown expressly emphasized to the Petitioner that any predictions with regard to his sentence are irrelevant and stated, "you have no right to withdraw your plea on the grounds that anyone's prediction as to the guideline range or expectation of sentence proves inaccurate."  (Tr. at 11:4-6.)

29

Judge Brown went so far as to explain to Petitioner he could be sentenced to a maximum of 40 years in jail with a $500,000 fine. This colloquy, held in open court, sufficiently dispelled any previous erroneous sentencing predictions Petitioner's counsel may have made.

The court also finds Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence by filing a motion pursuant to Section 2255. The plea agreement expressly states that if Petitioner was sentenced within the Guideline range for a Level 26 offense, he waived his right to file a Section 2255 petition attacking his sentence. This waiver was fully explained during the plea colloquy by both the sentencing judge and the Assistant U.S. Attorney. The Petitioner indicated in writing and on the record at the Rule 11 hearing that he understood his right to collaterally attack his sentence and that he was voluntarily waiving this right. It is undisputed that Petitioner was sentenced within the Guideline range for a Level 26 offense. Consequently, Petitioner waived his right to file a motion to vacate, alter or amend his sentence pursuant to 28 U.S.C. § 2255.

Therefore, the court is satisfied Petitioner knowingly and voluntarily entered into the plea agreement. Pursuant to the plea agreement, Petitioner waived his right to collaterally attack his sentence by filing a motion under 28 U.S.C. § 2255.

Since the court finds Petitioner voluntarily waived his right to bring the instant petition, and enforcement of the waiver provision will not work a miscarriage of justice, the court will dismiss Petitioner's Section 2255 action with prejudice.

### C. Motion to Return Property

Lastly, Petitioner filed a motion pursuant to Fed. R. Crim. P. 41(g) for return of property that was seized during the execution of a search warrant on November 7, 2005.  [Docket Item 10.]  The government filed opposition arguing this motion was filed in the wrong venue and should have been brought in the District of Colorado where the property was seized.  However, the government concedes that it currently possesses certain property of Petitioner in New Jersey and consents to returning this property to Petitioner.

Fed. R. Crim. P. 41(g) provides:

A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

A district court has jurisdiction to hear a motion for return of property made after the termination of criminal proceedings against a defendant.  Such an ancillary proceeding is treated as a civil proceeding for equitable relief.  <u>United States v.</u>

Chambers, 192 F.3d 374, 376 (3d Cir. 1999).  Property seized from a defendant during a criminal investigation must be returned once the criminal proceeding ends unless the property is contraband or subject to forfeiture.  Id.

In this case, it is undisputed that the property at issue was seized in Colorado.  Therefore, the proper venue for the instant motion is Colorado.  Standing alone, this could be sufficient to deny Petitioner's motion.

However, the court is aware that it stands in equity when deciding a motion to return property after the termination of criminal proceedings.  Here, the criminal proceedings have ended since Petitioner pled guilty and is currently serving his sentence.

Importantly, the government brought to the court's attention that Petitioner previously filed a motion for return of this property in the District of Colorado on October 17, 2006.  See District of Colorado Docket No. 05-2589, Docket Item 78.  After several status conferences, the government informed the District of Colorado that the property seized from Petitioner was transferred here to the District of New Jersey.  (Docket No. 05-2589, Docket Item 182.)  On April 9, 2008, the government further informed the court that USPIS did not have the property in their possession.  (Docket No. 05-2589, Docket Item 182 and 187.) According to the District of Colorado docket, no further action

32

was taken on Petitioner's motion and his property was never returned.

In the government's present opposition to Petitioner's motion, the government admits that USPIS currently has the following items of Petitioner's property in its possession:

- One (1) CD-ROM labeled "Business Center Solutions"
- One (1) CD-ROM  labeled "Nova Credit Bureau"
- One (1) CD-ROM labeled "Nova Investment Fund"
- One (1) container holding 21 CD-ROMs
- One (1) box of US Bank Checks in the name Shaun Rosiere Mortgage, Inc.
- One (1) DVD Movie
- Three (3) All-Access Visa Gift Cards
- One (1) CD-ROM labeled "Companies Incorporated"
- Two (2) CD-ROMs labeled "The Number Cruncher"
- Three (3) CD-ROMs labeled "K hypermedia"
- One (1) CD-ROM labeled "MSN Global Criminal Compliance"
- Twenty-five (25) floppy disks

(Resp't's Br. at 20.)  The government consents to returning this property to Petitioner since this property is conceded not to be contraband or subject to forfeiture.

Therefore, the court finds that Petitioner's motion for return of property should be granted.  Petitioner first filed this motion in the District of Colorado according to the venue provision of Fed. R. Crim. P. 41(g).  This motion was then left undecided after two years of status conferences at which the government indicated that the seized property was in the District of New Jersey.  The seized property is indeed currently located here in the District of New Jersey.  The government has verified which items of property remain in its possession and consents to

returning this property to Petitioner.

Accordingly, the court will grant Petitioner's motion with regard to the above listed property currently in the government's possession; the government, through AUSA Pierre-Louis, shall forthwith arrange with Mr. Rosiere the return of his property to him, whether at his place of confinement (if allowed) or to a designated relative or friend, and without further waste of time or judicial resources.

**IV.   CONCLUSION**

For the reasons discussed above, the court will deny Petitioner's motion for summary judgment [Docket Item 9] as the court properly exercised subject matter jurisdiction over the underlying indictment and criminal action.  The court will also deny Petitioner's motion to vacate, alter or amend his sentence pursuant to 28 U.S.C. § 2255.  The Petitioner knowingly and voluntarily waived his right to bring the instant action to collaterally attack his sentence when he entered into the plea agreement and pled guilty to Count I of the Indictment and a one-count Information.  The court finds this plea was voluntary and entered into knowingly and that enforcement of the waiver provision would not work a miscarriage of justice.  Accordingly, Petitioner's application for habeas relief will be dismissed and the instant action will be closed.

Finally, the court will grant Petitioner's motion for return of property to the extent the government consents to returning the specific items mention in Subsection III.C. above.  The criminal proceeding has ended and this property is not contraband or subject to forfeiture.  The property, while seized in Colorado, is currently in the government's possession in the District of New Jersey, and Petitioner's initial motion filed in the District of Colorado was left unresolved.

The accompanying Order will be entered.


**September 25, 2012**                          **s/ Jerome B. Simandle**
Date                                             JEROME B. SIMANDLE
                                                 Chief U.S. District Judge


35